## STATE v. HALDEMAN.

(Court of Civil Appeals of Texas. Austin. July 5, 1913. Rehearing Denied Oct. 8, 1913. Writ of Error Denied by Supreme Court Dec. 17, 1913.)

1. ARBITRATION AND AWARD (§ 73*)—RIGHT TO APPEAL.

Where the determination of a matter is referred to a special tribunal, to act as an arbitrator and not in due course of law, the determination of such a tribunal is final and cannot be appealed from, even though the person constituting the tribunal is the judge of a court' and the matter is decided in accordance with the usual rules of procedure.

[Ed. Note—For other cases, see Arbitration and Award, Cent. Dig. §§ 368–398; Dec. Dig. § 73.*]

2. ARBITRATION AND AWARD (§ 73*)—SUBMISSION TO ARBITRATION—EFFECT.

Act 31st Leg. (2d Called Sess.) c. 28, making an appropriation for the payment of a claim against the state held by the wife of a public contractor for extra work and materials furnished the state for a public building, made the establishment of the claim by any district court a condition precedent to payment. Held, that a district judge, in deciding upon such a claim, was not acting as a special commissioner or arbitrator whose judgment would be final, but as a duly constituted court.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. §§ 368–398; Dec. Dig. § 73.*]

3. COURTS (§ 247*)—TEXAS COURT OF CIVIL APPEALS—JURISDICTION—"CASE."

Under Const. art. 5, § 6, declaring that the Courts of Civil Appeals shall have appellate jurisdiction, coextensive with their respective districts in all civil cases of which the civil courts shall have jurisdiction, a Court of Civil Appeals has jurisdiction of an appeal from a proceeding in the district court, where the district judge, under an authority of Acts 31st Leg. (2d Called Sess.) c. 28, established the claim of the wife of a public contractor against the state for extra work and materials furnished in the erection of a public building; the proceeding being in the nature of a "case," the wife suing the state, under the permission given, for a sum of money, and the state resisting recovery (citing 1 Words and Phrases, p. 985).

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751–754, 757, 759, 760, 762–764; Dec. Dig. § 247.*]

4. STATES (§ 120*)—APPROPRIATIONS—POWER OF LEGISLATURE.

Acts 1899, providing for the erection of buildings at the insane asylum, appropriated the specific sum of $47,000 for the buildings to be erected, and provided that the fees of the architect should be discharged out of that amount. The contractor for the buildings performed extra work and furnished extra materials to a considerable amount. Held, that the statute providing for the erection of the building was not a sufficient pre-existing law providing for the payment of the extra work to warrant the Legislature in making an appropriation for its payment; Const. art. 3, § 44, declaring that the Legislature shall not appropriate any money on any claim when the same shall not have been provided for by pre-existing law.

[Ed. Note.—For other cases, see States, Cent. Dig. § 119; Dec. Dig. § 120.*]

5. STATES (§ 120*)—PUBLIC BUILDINGS.

Where a contractor for a public building performed extra work and furnished additional materials, the Legislature is, under Const. art. 3, § 53, providing that the Legislature shall have no power to grant extra compensation to a contractor after the service has been render-

ed, without authority to make an appropriation for the payment of such work and services.

[Ed. Note.—For other cases, see States, Cent. Dig. § 119; Dec. Dig. § 120.*]

6. STATES (§ 120*)—CLAIMS AGAINST STATES—DEBTS.

Where a public contractor did extra work and furnished additional materials without any warrant in law for his compensation, the Legislature cannot, under Const. art. 3, § 49, declaring that no debt shall be created on behalf of the state, except to supply casual deficiencies of revenue, defend the state, and pay existing debts, make an appropriation to pay the contractor; there being no pre-existing debt as a basis.

[Ed. Note.—For other cases, see States, Cent. Dig. § 119; Dec. Dig. § 120.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by Mrs. E. R. Haldeman against the State of Texas. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

B. F. Looney, Atty. Gen., and W. A. Keeling and Luther Nickels, Asst. Attys. Gen., for the State. F. C. von Rosenberg and N. A. Rector, both of Austin, for appellee.

## Findings of Fact.

JENKINS, J. On or about May 20, 1899, the Legislature of Texas passed an appropriation bill, which among other things provided for the erection of a new infirmary at the State Lunatic Asylum, and appropriated therefor the sum of $10,000, and also provided for the erection of a building to be used as an associate dining hall and kitchen, storeroom, amusement hall, and quarters for employés, and appropriated therefor the sum of $37,500, or so much thereof as might be necessary, to be expended in the erection of said buildings under the direction of the board of managers, in accordance with plans and specifications to be furnished by an architect to be appointed by the Governor; the compensation to said architect to be paid out of said appropriation. Plans and specifications were drawn by an architect appointed under said act, and contract was let by the board of managers to one John F. Hart. H. P. Haldeman, deceased, became a surety on the bond of said Hart to secure the performance of said contract. Said building was erected and completed by said contractor and said Haldeman, in accordance with the plans and specifications of the state architect, on or about October 16, 1901. It is alleged by appellee that said Hart and said Haldeman furnished, at their own expense, material and labor on said building, amounting in the aggregate to $13,393.44, not included in the original contract; that on or about December 18, 1899, Haldeman acquired by written transfer all the rights and benefits belonging to said Hart, growing out of said contract, and the labor done in erecting said buildings; that neither the said Hart nor the said Haldeman

in his lifetime ever received any pay from the state or from any other person for said extra work or extra material; that said Haldeman presented his claim for said extra work and material, amounting to said sum of $13,393.44, to the Twenty-Eighth Legislature, and that said Legislature allowed on said claim the sum of $12,000, and appropriated that sum for the payment of said debt, but the same was vetoed by the Governor; that thereafter said claim was presented to the Twenty-Ninth Legislature and ·allowed for the sum of $10,920.30, which item was also vetoed by the Governor; that the Thirty-First Legislature passed a general appropriation bill (Gen. Laws 1909, c. 28, p. 523), carrying with it many miscellaneous items, and among others an appropriation of $11,000, in words and figures as follows: "For the payment of the claim against the state held by the wife of H. P. Haldeman, growing out of extra work and material furnished the State Lunatic Asylum for an associate dining hall, not contemplated in the contract and not in the plans and specifications to same, and also for work done and material furnished on the infirmary building and for extras over and above the contract, and not mentioned in the plans and specifications, furnished in 1899 to 1901, provided said claim is established by any district court of the state of Texas, and authority is hereby given to the said Mrs. H. P. Haldeman, or her assigns or the holder of said claim, to institute suit against the state of Texas on said claim," etc.

The trial court found all of these allegations to be true, and the testimony is sufficient to sustain these findings of the court. The defendant answered by general demurrer and general denial, and by several special exceptions hereinafter referred to. The trial court rendered judgment for appellee for the sum of $10,920.30, with interest thereon at the rate of 6 per cent. per annum from the date of said judgment.

## Opinion.

[1] 1. Appellee has filed in this court a motion to dismiss the appeal herein for the reason that the act above referred to, authorizing appellee to sue the state, did not reserve the right of appeal to the state, and that therefore no appeal will lie from the judgment of said court, and that this court is without jurisdiction. It is well settled that where the determination of a matter is referred to a special tribunal proceeding under authority of such reference, and not by due course of common law, the determination of such tribunal is final. This may be true, even though the party constituting such special tribunal is a judge of a court, and the matter is brought before him by petition and answer, and he hears the evidence upon said issue under the same rules and regulations as would be applicable in a suit at law. Brown v. Wheelock, 75 Tex. 387, 12 S. W. 111, 841.

[2, 3] 2. The first issue presented by the motion to dismiss is as to whether the action of the district judge of Travis county, before whom the case was tried without a jury, was that of a special commissioner or of a court. It will be seen, by reference to the act of the Legislature referred to in the above statement of facts, that the claim of Mrs. Haldeman was to be paid, "provided said claim is established by any district court of the state of Texas." It will further be seen that said act authorized Mrs. Haldeman to institute suit against the state of Texas for the recovery of said claim. We hold that the district judge, in rendering judgment in this case, did so as the district court of Travis county, and not as a special commissioner.

3. Appellee's claim having been sued upon in the district court of Travis county, it was not necessary that the act authorizing such suit should have specially provided for the right of appeal, inasmuch as the Courts of Civil Appeals are given, by the Constitution of this state, "appellate jurisdiction, coextensive with the limits of their respective districts, which shall extend to all civil cases of which the district courts or county courts have original jurisdiction." Article 5, § 6. The proceedings herein in the district court had all the elements of a "case." The plaintiff was seeking to recover from the defendant a sum of money, and the defendant was resisting such recovery, and the issue thus formed was submitted to the arbitrament of the court. Slaven v. Wheeler, 58 Tex. 23; Osborn v. Bank of U. S., 22 U. S. (9 Wheat.) 738, 6 L. Ed. 204; Words and Phrases, vol. 1, p. 985. For the reasons above given the motion to dismiss is overruled.

[4, 5] 4. Appellant insists, under appropriate assignments of error, that the appropriation bill referred to in the statement of facts, under and by virtue of which this suit was instituted and judgment herein rendered for plaintiff, was and is void and of no effect, because the same is contrary to and in violation of section 44, art. 3, of the Constitution of Texas. Said article among other things provides that: "The Legislature * * * shall not grant * * * by appropriation or otherwise, any amount of money out of the treasury of the state, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." The issue here presented is as to whether or not the act of 1899 (Gen. Laws 1899, c. 5), authorizing the erection of said buildings, was a pre-existing law, providing for the payment for work done and material furnished on said buildings in excess of the sum of $47,500, the aggregate amount of the appropriation for such buildings; that is to say, did the directors of the asylum have authority, under said law, to contract for buildings in excess of the amount appropriated therefor?

We hold that they did not. Nichols v. State, 11 Tex. Civ. App. 327, 32 S. W. 452; State v. Wilson, 71 Tex. 291, 9 S. W. 155; section 44, art. 3, Constitution of Texas; City of Bryan v. Page, 51 Tex. 534, 32 Am. St. Rep. 637; Ferguson v. Halsell, 47 Tex. 422; Mechem on Public Officers, pp. 828, 334.

It is true, in the Nichols Case, supra, the act expressly provided that the amount to be expended for the building therein provided for should not exceed the sum of $40,000; but we hold that, when the Legislature appropriates a specific amount for a public building, this is equivalent to limiting the amount to be expended on such building to the amount named in the appropriation bill. The Legislature might authorize commissioners to contract for the erection of a public building of such a character and at such cost as to them might seem best, but such a proceeding would, to say the least of it, be unwise, and such has not been the usual course with reference to public buildings in Texas. It is well known that it is the custom with Legislatures to appoint committees to investigate the needs of public institutions, to hear evidence and visit and inspect such institutions, and to pass appropriation bills for definite amounts for the support, maintenance, and erection of buildings therefor. We do not think by the passage of the appropriation bill above referred to, wherein the specific amount of $47,500 was appropriated for the buildings for the lunatic asylum, the Legislature intended to grant the directors of said institution discretion to incur liability on the part of the state for more than this amount. This view of the case is emphasized by the fact that the act referred to provided that the architect should be paid for his services out of the amount thus appropriated.

5. The Constitution of this state has especially hedged the Legislature about with limitations as to its expenditure of public funds. In addition to the article of the Constitution above referred to, section 53 of article 3 provides that: "The Legislature shall have no power to grant * * * any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered or a contract has been entered into, and performed in whole or in part." In this case the amount claimed is for extra compensation for work done and material furnished, after the contractor had entered into and performed part of the contract.

[6] 6. Inasmuch as the claim herein sued on was not a legal debt against the state, for the reason that it was in contravention of section 44, art. 3, of the Constitution, above referred to, we do not think that the Legislature had any authority to make an appropriation for the payment of said claim, even had it done so absolutely, without requiring the same to be established by judgment of the court. Section 49, art. 3, of the Constitution of this state, provides as follows: "No debt shall be created by or on behalf of the state, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the state in war or pay existing debts." The claim sued on herein was not for any of the items mentioned above, unless it be to pay "existing debt." If the debt was illegal, it did not exist; and the effect of the appropriation bill was to create, as well as to pay, the debt.

For the reasons hereinbefore given, the judgment of the trial court is reversed and here rendered for appellant.

Reversed and rendered.